IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
COUNTY OF LASALLE

**FILED**
FEB 2 0 2007
LA SALLE COUNTY CIRCUIT CLERK
THIRTEENTH JUDICIAL CIRCUIT OF ILLINOIS

FRED C. MANGOLD, Independent )
Administrator of the Estate of Judith A. )
Mangold, Deceased, and FRED C. MANGOLD, )
Individually, )
)
            Plaintiffs, )
)
-vs- )
)
NATIONAL RAILROAD PASSENGER )
CORPORATION, EARL TOWNSHIP, Illinois, )
a municipal corporation, ROBERT GOODBRED, )
in his official capacity as EARL Township Highway )
Commissioner, and THE BURLINGTON )
NORTHERN AND SANTA FE RAILWAY )
COMPANY, a Delaware Corporation, )
)
            Defendants. )

Case No. 06 L 5

## SECOND AMENDED COMPLAINT

Plaintiffs, FRED C. MANGOLD, Independent Administrator of the Estate of Judith A. Mangold, Deceased, and FRED C. MANGOLD, Individually, hereby complain against NATIONAL RAILROAD PASSENGER CORPORATION ("AMTRAK"), EARL TOWNSHIP, Illinois, a municipal corporation, ROBERT GOODBRED, in his official capacity as Earl Township Highway Commissioner, and THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY ("BURLINGTON"), and each of them as follows:

    1.    On or about July 9, 2005, and at all times material, there existed railroad tracks running in a generally eastbound and westbound direction, approximately ½ mile north of North 46th Road at East 18th Road in Earl Township, LaSalle County, Illinois.

    2.    On or about July 9, 2005, at all times material, the aforesaid railroad tracks had both eastbound and westbound tracks. At that said time and place, BURLINGTON owned,


EXHIBIT B

1

maintained, and controlled the aforesaid train tracks. BURLINGTON is a Delaware Corporation, doing business in Illinois.

3. On or about July 9, 2005, at all times material, NATIONAL RAILROAD PASSENGER CORPORATION, also known as AMTRAK, a rail passenger transportation entity, owned, maintained, controlled, and operated railroad trains on the aforesaid train tracks.

4. On or about July 9, 2005, at all times material, AMTRAK employed persons as railroad train engineers, firemen, and/or conductors for the purpose of operating its trains.

5. On or about July 9, 2005, at all times material, these railroad train engineers, firemen, and/or conductors were working within the scope and authority of their agency and/or employment with AMTRAK.

6. On or about July 9, 2005, at all times material, these railroad train engineers, firemen, and/or conductors were working within the course of their agency and/or employment with AMTRAK.

7. On or about July 9, 2005, at approximately 3:25 p.m., Judith A. Mangold, a resident of Leland, Illinois, County of LaSalle, was traveling in her automobile in a northbound direction on East 18th Road approximately ½ mile north of North 46th Road. At that time and place, Judith Mangold came into contact with an AMTRAK train, Train No. 93, traveling eastbound on the north set of tracks. Judith A. Mangold was killed by this collision.

8. FRED C. MANGOLD, the husband of Judith A. Mangold, and a resident of Leland, Illinois, County of LaSalle, was appointed Independent Administrator of the Estate of Judith A. Mangold in *Estate of Judith A. Mangold*, Deceased, Case No. 2005-P-223.

9. Upon information and belief, EARL TOWNSHIP, Illinois, a municipal corporation and ROBERT GOODBRED, in his official capacity as Earl Township Highway

Commissioner, are each individually and/or jointly responsible for complying with the National Manual on Uniform Traffic Control Devices, which has been adopted by the Illinois Department of Transportation. Moreover, EARL TOWNSHIP and ROBERT GOODBRED, are each individually and/or jointly responsible for (1) the signage on East 18th Road, approaching the subject railroad tracks, including the railroad crossing, yield, and crossbuck signs, (2) the grading, paving, and maintenance of the roadway at East 18th Road, approaching the subject railroad tracks, and (3) ensuring that the sight line along the tracks are, for a reasonably safe distance, free from obstruction as one is traveling north along East 18th Road toward the subject tracks.

COUNT I
WRONGFUL DEATH -- AMTRAK

10. Plaintiffs restate and incorporate in this Count I paragraphs 1 through 9.

11. At the time and place alleged, AMTRAK, by and through the acts of its agents and/or employees, had a duty to Plaintiffs to operate its train in a safe manner. This duty included a duty to operate its train at a safe rate of speed given the conditions at hand, including visibility, the nature of the train crossing, and the safety and warning mechanism at the subject train crossing, a duty to sound its whistle at an appropriate distance from the crossing, and a duty to observe the right of way and maintain visibility to ensure safe passage through the crossing.

12. At the time and place alleged, AMTRAK, by and through the acts of its agents and/or employees, were negligent in one or more of the following respects:

(a) AMTRAK's train engineers, firemen, and/or conductors failed to reduce speed through a railroad crossing largely unprotected by safety devices, through a railroad crossing intersected by a rural road made of gravel, and through a crossing that was obstructed by crops;

(b) AMTRAK's train engineers, firemen, and/or conductors operated and controlled

said railroad train at a speed that was inconsistent with the exercise of ordinary care;

(c) AMTRAK's train engineers, firemen, and/or conductors failed to sound the train's whistle at an appropriate distance from the crossing;

(d) AMTRAK's train engineers, firemen, and/or conductors failed to maintain a safe visibility of the approach to the crossing;

(e) AMTRAK's train engineers, firemen, and/or conductors failed to apply the train's brakes within a reasonable time or to otherwise attempt to avoid a collision;

(f) AMTRAK failed to safely maintain the right of way and/or areas adjacent to the tracks, in that, AMTRAK permitted crops to grow in areas immediately adjacent to the subject tracks which blocked visibility to both the train and vehicles crossing at the grade crossing; and

(g) AMTRAK failed to keep the right of way, adjacent to its tracks, reasonably clear of crops for a distance of at least five hundred feet from the subject grade crossing where such crops materially obscured the deceased's view of the approaching train, in violation of 92 Ill. Adm. Code 1535.205.

13. As a proximate result of one or more of the foregoing negligent acts and/or omissions, the death of Judith A. Mangold was wrongfully caused.

WHEREFORE, FRED MANGOLD, Independent Administrator for the Estate of Judith A. Mangold, Deceased, hereby prays for judgment against NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a AMTRAK, in an amount in excess of $100,000.00, costs, and any further relief this Court deems just.

## COUNT II
## WRONGFUL DEATH -- ALL OTHER DEFENDANTS
## [OMITTED]

## COUNT III
## SURVIVAL -- ALL DEFENDANTS
(Count to stand as to AMTRAK Defendant only)

18. Plaintiffs restate and incorporate in this Count III paragraphs 1 through 17.

19. At the time of the accident, Plaintiff's decedent suffered pre-death fear, pain, and

4

suffering due to the negligence of the Defendants, and each of them.

WHEREFORE, FRED MANGOLD, Independent Administrator for the Estate of Judith A. Mangold, Deceased, hereby prays for judgment against NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a AMTRAK, in an amount in excess of $100,000.00, costs, and any further relief this Court deems just.

## COUNT IV
## LOSS OF SOCIETY AND CONSORTIUM -- ALL DEFENDANTS
(Count to stand as to AMTRAK Defendant only)

20. Plaintiffs restate and incorporate in this Count IV paragraphs 1 through 19.

21. Prior to the accident, FRED MANGOLD and Judith Mangold had a loving marriage and Judith Mangold contributed to the expenses of the family through her own business.

22. FRED MANGOLD is deprived of the love and support that he is entitled to due to the negligence of the Defendants, and each of them.

WHEREFORE, FRED MANGOLD hereby prays for judgment against NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a AMTRAK, in an amount to be determined by the trier of fact for lost support and society, in excess of $100,000.00, costs, and any further relief this Court deems just.

## COUNT V
## WRONGFUL DEATH -- EARL TOWNSHIP

23. Plaintiffs restate and incorporate in this Count V paragraphs 1 through 9.

24. On the date of the accident and for a significant time prior thereto, and from year to year, there were crops growing in areas immediately adjacent to the subject tracks which blocked visibility to both the train and vehicles crossing at the grade crossing. Moreover, during

all relevant time periods, East 18th Road was constructed of gravel.

25. Prior to July, 2005, EARL TOWNSHIP erected warning signage along East 18th Street approaching the subject railroad tracks, including railroad crossing, yield, and crossbuck signs. These signs were maintained by EARL TOWNSHIP and were present on the day of the collision.

26. At the time and place alleged, in erecting and maintaining warning signage, EARL TOWNSHIP owed a duty to Plaintiffs to comply with the mandates of the National Manual on Uniform Traffic Control Devices (2003 Edition), adopted by the Illinois Department of Transportation as the uniform system of traffic control devices for the State of Ilinois.

27. Section 8B.08 of the National Manual, entitled "STOP (R1-1) or YIELD (R1-2) Signs at Highway-Rail Grade Crossings," is applicable herein and states, in relevant part: "[a]t the discretion of the responsible State or local highway agency, STOP (R1-1) or YIELD (R1-2) signs . . . may be used at highway-rail grade crossings that have two or more trains per day an are without automatic traffic control devices." However, Section 2B.09 of the National Manual, entitled "YIELD Sign Applications," which is also applicable herein, states in relevant part:

> YIELD signs may be used instead of STOP signs if engineering judgment indicates that one or more of the following conditions exist:
>
> A. When the ability to see all potentially conflicting traffic is sufficient to allow a road user traveling at the posted speed, the 85th-percentile speed, or the statutory speed to pass through the intersection or to stop in a reasonably safe manner.
>
> B. If controlling a merge-type movement on the entering roadway where acceleration geometry and/or sight distance is not adequate for merging traffic operations.
>
> C. The second crossroad of a divided highway, where the median width at the intersection is 9 m (30 ft) or greater. In

this case, a STOP sign may be installed at the entrance to the first roadway of a divided highway, and a YIELD sign may be installed at the entrance to the second roadway.

D. An intersection where a special problem exists and where engineering judgment indicates the problem to be susceptible to correction by the use of a YIELD sign.

28. None of the four conditions, set forth in 2B.09 of the National Manual, existed. Specifically, because of a significantly impaired ability to see conflicting train traffic, a road user, such as Plaintiff's decedent, traveling at the appropriate rate of speed along East 18th Road, a gravel roadway, could not pass through the intersection or stop in a reasonably safe manner. Moreover, this was not a merging situation or a situation involving a divided highway. Finally, this was not an intersection where engineering judgment indicated a special problem may be corrected by use of a YIELD sign.

29. The National Manual on Uniform Traffic Control Devices therefore mandated that a STOP sign be used and prohibited the use of a YIELD sign at the subject crossing.

30. Because EARL TOWNSHIP erected a YIELD sign instead of a STOP sign, as was required by law, Plaintiff's decedent, who was traveling at a lawful speed, was unable to safely cross the train tracks and/or stop her automobile once she saw a train approaching the crossing, and was therefore killed.

31. EARL TOWNSHIP also had a duty to exercise ordinary care to maintain the property at or about the situs of the accident, including the roadway along East 18th Road leading up to the railroad tracks at issue, in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted.

32. Specifically, EARL TOWNSHIP had a duty to provide and/or maintain appropriate signage and safety precautions on East 18th Road, approaching the subject railroad

tracks, it had a duty to provide and/or maintain the grading and paving of the roadway at East 18th Road, approaching the subject railroad tracks, and it had a duty to maintain the property so that there is a safe sight line, free from obstruction, along and adjacent to the tracks, as one is traveling north along East 18th Road.

33. Plaintiff's decedent was an intended and permitted user of said property; moreover, Plaintiff's decedent was using the property in a manner which was reasonably foreseeable to EARL TOWNSHIP.

34. EARL TOWNSHIP had actual or constructive notice of the existence of the aforesaid unsafe conditions, including the existence of crops which blocked the view of a traveler traveling northbound on East 18th Road, in reasonably adequate time prior to the injury to have taken measures to remedy or protect against such conditions. Specifically, the unsafe conditions existed for a significant time prior to the accident.

35. At the time and place alleged, EARL TOWNSHIP was negligent, or alternatively, was deliberately indifferent to and consciously disregarded the safety of Plaintiff's decedent in one or more of the following respects:

(a) said Defendant erected a YIELD sign at the subject crossing which is prohibited by law;

(b) said Defendant failed to provide and/or maintain appropriate signage and safety precautions on East 18th Road, particularly given the nature of the road and the impediments to visibility;

(c) said Defendant failed to provide and/or maintain appropriate grading and paving of the subject roadway, particularly given the impediments to visibility and the lack of safety precaution or signage at the subject crossing;

(d) said Defendant failed to maintain a safe sight line, free from obstruction, along and adjacent to the subject tracks; and

(e) said Defendant failed to provide persons crossing the tracks at East 18th Street

with a reasonably safe passage across the tracks.

46. As a proximate result of one or more of the foregoing negligent or willful and wanton acts and/or omissions, the death of Judith A. Mangold was wrongfully caused.

WHEREFORE, FRED MANGOLD, Independent Administrator for the Estate of Judith A. Mangold, Deceased, hereby prays for judgment against EARL TOWNSHIP in an amount in excess of $100,000.00, costs, and any further relief this Court deems just.

## COUNT VI
### WRONGFUL DEATH -- ROBERT GOODBRED, EARL TOWNSHIP HIGHWAY COMMISSIONER

47. Plaintiffs restate and incorporate in this Count VI paragraphs 1 through 9 and 24 through 46.

48. At the time and place alleged, ROBERT GOODBRED, in his official capacity as Earl Township Highway Commissioner, owed Plaintiffs those same duties identified in Count V, including the duty to follow the mandates of the National Manual on Uniform Traffic Control Devices (2003 Edition).

49. Plaintiff's decedent was an intended and permitted user of said property; moreover, Plaintiff's decedent was using the property in a manner which was reasonably foreseeable to ROBERT GOODBRED.

50. ROBERT GOODBRED had actual or constructive notice of the existence of the aforesaid unsafe conditions in reasonably adequate time prior to the injury to have taken measures to remedy or protect against such conditions. Specifically, the unsafe conditions existed for a significant time prior to the accident.

51. At the time and place alleged, EARL TOWNSHIP was negligent, or alternatively, was deliberately indifferent to and consciously disregarded the safety of Plaintiff's decedent in

one or more of the following respects:

(a) said Defendant erected a YIELD sign at the subject crossing which is prohibited by law;

(b) said Defendant failed to provide and/or maintain appropriate signage and safety precautions on East 18th Road, particularly given the nature of the road and the impediments to visibility;

(c) said Defendant failed to provide and/or maintain appropriate grading and paving of the subject roadway, particularly given the impediments to visibility and the lack of safety precaution or signage at the subject crossing;

(d) said Defendant failed to maintain a safe sight line, free from obstruction, along and adjacent to the subject tracks; and

(e) said Defendant failed to provide persons crossing the tracks at East 18th Street with a reasonably safe passage across the tracks.

52. As a proximate result of one or more of the foregoing negligent or willful and wanton acts and/or omissions, the death of Judith A. Mangold was wrongfully caused.

WHEREFORE, FRED MANGOLD, Independent Administrator for the Estate of Judith A. Mangold, Deceased, hereby prays for judgment against ROBERT GOODBRED, in his official capacity as EARL TOWNSHIP HIGHWAY COMMISSIONER, in an amount in excess of $100,000.00, costs, and any further relief this Court deems just.

## COUNT VII
## LOSS OF SOCIETY AND CONSORTIUM -- EARL TOWNSHIP

53. Plaintiffs restate and incorporate in this Count VII paragraphs 1 through 9 and 24-46.

54. Prior to the accident, FRED MANGOLD and Judith Mangold had a loving marriage and Judith Mangold contributed to the expenses of the family through her own business.

55. FRED MANGOLD is deprived of the love and support that he is entitled to due to

the negligence or willful and wanton acts and/or omissions of the Defendant.

WHEREFORE, FRED MANGOLD hereby prays for judgment against EARL TOWNSHIP in an amount to be determined by the trier of fact for lost support and society, in excess of $100,000.00, costs, and any further relief this Court deems just.

## COUNT VIII
## LOSS OF SOCIETY AND CONSORTIUM -- ROBERT GOODBRED, EARL TOWNSHIP HIGHWAY COMMISSIONER

56. Plaintiffs restate and incorporate in this Count VIII paragraphs 1 through 9 and 47 through 52.

57. Prior to the accident, FRED MANGOLD and Judith Mangold had a loving marriage and Judith Mangold contributed to the expenses of the family through her own business.

58. FRED MANGOLD is deprived of the love and support that he is entitled to due to the negligence or willful and wanton acts and/or omissions of the Defendant.

WHEREFORE, FRED MANGOLD hereby prays for judgment against ROBERT GOODBRED, in his official capacity as EARL TOWNSHIP HIGHWAY COMMISSIONER, in an amount to be determined by the trier of fact for lost support and society, in excess of $100,000.00, costs, and any further relief this Court deems just.

## IX
## SURVIVAL -- EARL TOWNSHIP

59. Plaintiffs restate and incorporate in this Count IX paragraphs 1 through 9 and 24 through 46.

60. At the time of the accident, Plaintiff's decedent suffered pre-death fear, pain, and suffering due to the negligence of the Defendants.

WHEREFORE, FRED MANGOLD, Independent Administrator for the Estate of Judith A. Mangold, Deceased, hereby prays for judgment against EARL TOWNSHIP, in an amount in excess of $100,000.00, costs, and any further relief this Court deems just.

## X
## SURVIVAL -- ROBERT GOODBRED,
## EARL TOWNSHIP HIGHWAY COMMISSIONER

61. Plaintiffs restate and incorporate in this Count X paragraphs 1 through 9 and 47 through 52.

62. At the time of the accident, Plaintiff's decedent suffered pre-death fear, pain, and suffering due to the negligence of the Defendants.

WHEREFORE, FRED MANGOLD, Independent Administrator for the Estate of Judith A. Mangold, Deceased, hereby prays for judgment against ROBERT GOODBRED, in his official capacity as EARL TOWNSHIP HIGHWAY COMMISSIONER, in an amount in excess of $100,000.00, costs, and any further relief this Court deems just.

## XI
## WRONGFUL DEATH -- BURLINGTON

63. Plaintiffs restate and incorporate in this Count XI paragraphs 1 through 9.

64. At the time and place alleged, BURLINGTON, by and through the acts of its agents and/or employees, had a duty to Plaintiffs to maintain the subject tracks and the areas adjacent thereto in a safe condition.

65. At the time and place alleged, BURLINGTON, by and through the acts of its agents and/or employees, were negligent in one or more of the following respects:

(a) BURLINGTON failed to safely maintain the right of way and/or areas adjacent to the tracks, in that, BURLINGTON permitted crops to grow in areas immediately adjacent to the subject tracks which blocked visibility to both the train and vehicles crossing at the grade crossing; and

12

(b) BURLINGTON failed to keep the right of way, adjacent to its tracks, reasonably clear of crops for a distance of at least five hundred feet from the subject grade crossing where such crops materially obscured the deceased's view of the approaching train, in violation of 92 Ill. Adm. Code 1535.205.

66. As a proximate result of one or more of the foregoing negligent acts and/or omissions, the death of Judith A. Mangold was wrongfully caused.

WHEREFORE, FRED MANGOLD, Independent Administrator for the Estate of Judith A. Mangold, Deceased, hereby prays for judgment against BURLINGTON, in an amount in excess of $100,000.00, costs, and any further relief this Court deems just.

## XII
## LOSS OF SOCIETY AND CONSORTIUM -- BURLINGTON

67. Plaintiffs restate and incorporate in this Count XII paragraphs 1 through 9 and 64 through 66.

68. Prior to the accident, FRED MANGOLD and Judith Mangold had a loving marriage and Judith Mangold contributed to the expenses of the family through her own business.

69. FRED MANGOLD is deprived of the love and support that he is entitled to due to the negligence or willful and wanton acts and/or omissions of the Defendant.

WHEREFORE, FRED MANGOLD hereby prays for judgment against BURLINGTON, in an amount to be determined by the trier of fact for lost support and society, in excess of $100,000.00, costs, and any further relief this Court deems just.

## XIII
## SURVIVAL -- BURLINGTON

70. Plaintiffs restate and incorporate in this Count XIII paragraphs 1 through 9 and 64 through 66.

71. At the time of the accident, Plaintiff's decedent suffered pre-death fear, pain, and suffering due to the negligence of the Defendants.

WHEREFORE, FRED MANGOLD, Independent Administrator for the Estate of Judith A. Mangold, Deceased, hereby prays for judgment against BURLINGTON, in an amount in excess of $100,000.00, costs, and any further relief this Court deems just.

>Respectfully submitted,
>FRED C. MANGOLD, Independent
>Administrator for the Estate of Judith A. Mangold,
>Deceased, and FRED C. MANGOLD, Individually
>
>By: _____
>     One of His Attorneys

Baumann & Shuldiner
20 South Clark Street, Ste. 500
Chicago, IL 60603

(312) 558-3119